UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KATHY L. PURVIS,                        )
                                        )
                Plaintiff,              )
                                        )
        v.                              )   CASE NO. 1:04-cv-2124-DFH-VSS
                                        )
JO ANNE B. BARNHART,                    )
Commissioner of the Social              )
Security Administration,                )
                                        )
                Defendant.              )

ENTRY ON JUDICIAL REVIEW

Plaintiff Kathy L. Purvis seeks judicial review of a final decision by the Commissioner of Social Security denying her application for supplemental security income benefits.  Acting for the Commissioner, an Administrative Law Judge ("ALJ") determined that Ms. Purvis was not disabled under the Social Security Act because she retained the residual functional capacity to perform a significant range of sedentary work.  The ALJ found that Ms. Purvis' account of the severity of her impairments was not credible and therefore did not support a finding of disability.  As explained below, the case must be remanded because the ALJ committed both factual and legal errors in discussing the evidence he cited to support this critical finding.

*Background*

Ms. Purvis was 48 years old in 2004 when the ALJ found her ineligible for supplemental security income under the Social Security Act.  Ms. Purvis has an eighth grade education.  She had worked as a housekeeper, head housekeeper, and in the laundry area of a motel for 27 years when her employment ended in 2001.  Ms. Purvis claims that she was fired from her job because her impairments made it no longer possible for her to clean tubs, toilets, and floors to her employer's satisfaction.

Ms. Purvis applied for supplemental security income on or about November 26, 2001.  She claimed to suffer from shoulder pain.  She claimed that this impairment disabled her, within the meaning of the Social Security Act, after January 1, 2000.  Because supplemental security income is available only from the date of application for benefits, the ALJ correctly considered whether Ms. Purvis had proven disability as of November 26, 2001.  See 20 C.F.R. § 416.335; *Perkins v. Chater*, 107 F.3d 1290, 1295 (7th Cir. 1997).[1]

Ms. Purvis' relevant medical history is summarized as follows.  On August 28, 1995, Ms. Purvis visited the Henry County Memorial Hospital emergency room  ("Henry County ER") because she had heard a pop in her right shoulder while pulling laundry out of a washing machine at work the day before.

---

[1]Ms. Purvis had minimal earnings in 2000 and 2001.  The ALJ found they did not show "substantial gainful activity."  R. 16.

The examining nurse noted decreased range of motion and pain in the right shoulder.  Ms. Purvis was diagnosed with a shoulder strain and given a sling for her arm.  R. 193-94.

On March 7, 1996, Ms. Purvis again visited the Henry County ER complaining of lower back pain caused by falling at work while carrying sheets one week earlier.  R. 196.  Ms. Purvis reported pain when sitting and when attempting to stand.  R. 197.  X-rays of her pelvis, sacrum, and coccyx were normal, but X-rays of her lumbar spine revealed mild degenerative arthritis, spondylolisthesis with bilateral pars defect L5, and unilateral partial sacralization L5 on the left.  R. 199.

A Social Security Administration employee interviewed Ms. Purvis when she applied for benefits in November 2001.  Ms. Purvis reported trouble completing her disability report because of shoulder pain, and the interviewer noted that she frequently groaned while sitting and tended to lean to one side.  R. 152.  The interviewer also noted that Ms. Purvis shook her right hand as if she experienced pain while writing.

Dr. Q. Jia, M.D., conducted a consultative physical examination of Ms. Purvis in December 2001.  Ms. Purvis told Dr. Jia about her work-related injuries and said that six months of physical therapy had not helped.   She also reported that she had tried three steroid shots for pain that also did not help.  Ms. Purvis

told Dr. Jia that her right shoulder pain and weakness had progressively worsened and that she used her left hand most of the time to do everything. She reported that she could not stand for more than 10-15 minutes or her hips would start to lock up, and that she could walk only one block before stopping because of pain. R. 183.

Dr. Jia found that Ms. Purvis' straight-leg raising was positive at 70 degrees bilaterally and induced hip pain. R. 185. Dr. Jia also found that she had decreased pinprick sensations in her whole right upper extremities. Dr. Jia noted mild atrophy in Ms. Purvis' right shoulder area, upper arm, and hand. Her right upper extremity motor strength was rated 4/5, but Dr. Jia found that she had full range of motion of all extremities, including her right shoulder. R. 185-86. Dr. Jia noted an impression of osteoarthritis of her hip. R. 186. All other findings were normal, and Dr. Jia observed that Ms. Purvis was able to walk on her heels and toes, bend, and squat without difficulty. R. 185. He also recorded that she was not taking any medications at that time. R. 183. Dr. Jia did not assess Ms. Purvis' limitations or her residual functional capacity.

On January 23, 2002, the Social Security Administration denied Ms. Purvis' application, finding that her condition should not prevent her from working. R. 113. Ms. Purvis filed a request for reconsideration on February 22, 2002. She also filed a reconsideration disability report, reporting increased pain in her shoulder and pain and arthritis in her back, hips, and joints. R. 132. She

reported additional impairments including depression, anxiety, nervousness, obesity, and memory, reading, and comprehension problems.  R. 135.

On April 16, 2002, A. Hopper, a claims adjudicator from the Disability Determination Bureau, conducted a phone interview of Ms. Purvis.  Ms. Purvis reported that her depression and anxiety "come and go."  R. 129.  She reported no history of mental health treatment or medication.  Ms. Purvis stated that others performed most of her household chores because of her shoulder pain, but that she could sometimes help out by running the vacuum or doing dishes.  Hopper also noted that although Ms. Purvis reported worsening pain, she had no family doctor or the resources to obtain one.  R. 130.

In April, D. Unversaw, Ph.D. reviewed Ms. Purvis' file to advise on the severity of any potential mental impairments.  R. 166-80.  Dr. Unversaw concluded that Ms. Purvis suffered from mild restrictions in daily living, mild difficulties in social functioning, and mild difficulties with concentration, persistence, or pace.  R. 177.

Jason Mara, M.D., performed a consultative physical examination of Ms. Purvis in May 2002.  Ms. Purvis reported increased pain in her right shoulder and both hips over the previous six years.  R. 163.  She reported tension headaches caused by the pain in her neck and shoulder.  She stated that she smoked marijuana on a daily basis to relieve her pain.  Ms. Purvis also complained of

weight gain that she believed was caused by her inability to maintain normal activities because of progressively worsening pain.  She stated that she could walk no further than one and one-half blocks at a time because of the pain in her hips.

Dr. Mara found that Ms. Purvis had the ability to stand and walk on her heels and toes and tandem walk without difficulty.  R. 164.  He noted soft tissue tenderness around the right shoulder and over the right hip.  Dr. Mara recorded abnormal range of motion findings of 90 degrees forward, 0 degrees backward, and 80 degrees abduction in her right shoulder.  He recorded abnormal range of motion findings of 100 degrees forward and 30 degrees backward in Ms. Purvis' left shoulder.  *Id.*  Dr. Mara found normal muscle strength and tone in her upper and lower extremities.  *Id.*  He observed that she was slow to rise from a seated position and that she limped with her right leg.  Dr. Mara rated her grip strength as 4/5 in both hands and found her fine finger skills to be normal.  He recorded impressions of right shoulder pain, headaches, and obesity.  Dr. Mara noted that Ms. Purvis had undergone physical therapy and received steroid injections in her joints for her shoulder pain, but that these provided little relief.  *Id.*

J. Sands, M.D., a consultative examiner, completed a residual functional capacity assessment of Ms. Purvis on June 12, 2002.  Dr. Sands determined that Ms. Purvis could stand and/or walk for 6 hours per day, sit less than 6 hours per day, and that she was limited in her lower extremities.  R. 156.  Dr. Sands found 4/5 motor and grip strength in her right upper extremities and 5/5 motor and

grip strength in her left upper extremities.  Dr. Sands found decreased range of motion in her shoulder, but normal fine finger manipulation.  Ms. Purvis was able to stand and walk on her heels and toes and tandem walk.  Dr. Sands found Ms. Purvis' allegations regarding the nature and severity of her symptoms, as well as the functional limitations imposed by these symptoms, to be "fully credible."  R. 160.

Ms. Purvis' application for benefits was denied upon reconsideration on June 17, 2002.  She filed a timely request for a hearing before an Administrative Law Judge in June 2002.

On June 28, 2002, Ms. Purvis visited the Henry County ER complaining of a growth on her right shoulder.  The growth was diagnosed as a shoulder tumor. R. 200.  Her X-rays revealed mild degenerative arthritis at the joint on top of her shoulder but no evidence of fracture, dislocation, or bony changes.  R. 204.  The treating nurse noted that Ms. Purvis had stated that she was "waiting on Medicaid to come through but couldn't wait any longer."  R. 201.

Ms. Purvis visited the Henry County ER on January 26, 2003, complaining of nervousness, dizziness, hot flashes, excessive sweating, anxiety, and chills.  R. 205.  The treating physician noted that she was sweating profusely, hyperventilating, and that she became very dizzy upon rotation of her head.  R. 205-06.  She was diagnosed as having experienced an adverse reaction to her

January 9th steroid treatment.  *Id.*  She was prescribed Vistaril for anxiety.  R. 209.

Ms. Purvis was seen at Wishard Hospital on February 14, 2003.  The physician noted that Ms. Purvis reported weakness in her right arm and the inability to lift a gallon of milk or to move her arm overhead.  R. 212.  Ms. Purvis rated her pain at 9 on a 10-point scale.  *Id.*  Ms. Purvis visited Wishard again on or around April 18th, and X-rays showed partial sacralization of the L5 vertebrae and spondylolisthesis of the L5 vertebrae.  R. 214.  On April 24th, Ms. Purvis reported to Wishard that she was still having pain in her right hip and tail bone from being knocked down on April 4th.  R. 215.  A treating physician noted no abnormalities in her lower back, but tender to palpation of her lumbar and sacral spine.  R. 216.  She was given hydrocodone for pain.  R. 217.

On May 19, 2003, Ms. Purvis visited Wishard Hospital complaining of right shoulder pain from falling the week prior and from overuse.  R. 218.  She ranked her pain at 10 on a 10-point scale.  *Id.*  The treating physician noted that she avoided head movements during the interview and experienced pain with her eyes closed.  R. 219.  He also noted that she had stopped taking Vicodin and Darvocet because they caused nausea and upset stomach.  R. 218.  She was given cyclobenzaprine for muscle spasms.  R. 220.  Ms. Purvis had an MRI done on her right shoulder a few weeks later.  The only abnormal finding was

acromioclavicular degenerate change (at the apex of the shoulder) with inflammation.  R. 221.

Ms. Purvis visited Wishard Hospital on July 28, 2003 complaining of severe right shoulder pain.  The treating physician noted exam findings of constant pain and decreased strength in her right shoulder, and tingling and numbness in her right hand fingers.  R. 222.  He cited Ms. Purvis' most recent MRI results and noted an impression of possible radiculopathy in the C6-7 region.  *Id.*

Wishard Hospital referred Ms. Purvis to Midtown Community Mental Health Center to evaluate her symptoms of anxiety.  A social worker from the Center conducted a phone interview of Ms. Purvis on August 26, 2003.  Ms. Purvis reported having tried various medications for anxiety, including Zoloft, Valium, and Xanax but without much success.  R. 230.  Ms. Purvis was assessed at the Center a few days later, and Ms. Lois Hughes, M.S.W., agreed that she presented symptoms consistent with anxiety disorder.  R. 233.  It also was recorded that her affect appeared blunted, her mood anxious, and her judgment maladaptive, and her level of functioning was assessed at 60 on the Global Assessment Functioning ("GAF") scale.  R. 231.

Ms. Purvis attended three pain management sessions at Wishard Hospital during September 2003.  See R. 224-27.  During her initial evaluation, the treatment provider listed impressions of chronic pain, panic attacks with

agoraphobia, depression, and rated her at 65 on the GAF scale.  R. 227.  The provider wrote that Ms. Purvis denied depression and anxiety, but also noted that Ms. Purvis hated groups, did not drive or leave her home, and felt she could not be in the same room with more than two people at a time.  *Id.*

In her follow-up visit at the Center two weeks after her initial assessment, Ms. Purvis reported increased irritability and stated that she experienced panic attacks all the time.  R. 234.  Again two weeks later, Ms. Purvis visited the Center and reported that the Zoloft she was currently taking made her feel "empty" and "jittery" inside.  R. 235.  By early November 2003, Ms. Purvis reported that her medications had improved her mental symptoms but that she had then run out of medications.  R. 236.  Ms. Hughes described Ms. Purvis' mood as "euthymic" (calm or peaceful) and her affect as "congruent."  *Id.*

Ms. Purvis underwent another MRI test on December 11, 2003.  It showed degenerative disc disease at all levels, with the most significant disease at the L3/L4 level.  R. 228.

Ms. Purvis, Dr. Richard Hutson, a physician board-certified in orthopedic surgery, and Constance Brown, a vocational expert, testified before ALJ Peter Americanos on April 22, 2004.  R. 49-102.  At the hearing, Ms. Purvis testified about the injury she had experienced to her right shoulder while doing laundry at work in 1994 or 1995.  R. 54.  She also testified that she fell and hurt her back

-10-

in 2000 when her grandchildren accidentally knocked her off balance while hugging her goodbye.  R. 55.

Ms. Purvis stated that she could not do personal chores, could not wash or comb her hair on most days, and drove only once a week with her daughter to the store (but did not go inside).  R. 51, 60, 65 (daughter pushes her to get out of the house, but she will not go in the grocery store).  She testified that she could sit for about 20 minutes, walk one block, stand for 5-10 minutes, and lift about 5 pounds.  R. 58-59.  Ms. Purvis described piercing, shooting pain that traveled between her hips and her legs, and she rated her pain at 8 on a 10-point scale. R. 58, 65.  She testified that, at the time of the hearing, she smoked two packs of cigarettes and three marijuana joints each day for her pain.  R. 56, 57.  She stated that anti-inflammatory medication for her hip had caused stomach problems, fever blisters, and weight loss.  R. 58.  She also testified that she had stopped taking Prozac after what she believed was an accidental overdose because she "got real cold" and could not keep her eyes open.  R. 77.  Ms. Purvis also testified about her panic attacks, anxiety, and symptoms of depression.  R. 53-68, 71-72.

Dr. Hutson testified that Ms. Purvis had degenerative disc disease but did not meet or equal Listing 1.04A because she did not exhibit the required loss of neurological function in a neuroanatomical sense.  R. 85-96.  Dr. Hutson opined that Ms. Purvis could perform sedentary work that did not require overhead lifting or lifting her elbows over her shoulders.  R. 87.

Ms. Purvis submitted additional medical information following her hearing in April.  One record was a physician certification completed by John Sidle, M.D., a physician at Wishard Hospital, on January 28, 2004.  Dr. Sidle concluded that Ms. Purvis was permanently and severely restricted in mobility because of her arthritic condition, orthopedic condition, and neurological impairment.  R. 247.  Ms. Purvis also submitted records from Henry County ER where she visited after falling and fracturing a finger on May 11, 2004.  R. 250, 254.

The ALJ issued his decision denying supplemental security income.  R. 12-22.  The Appeals Council denied further review of the ALJ's decision, R. 7, so the ALJ's decision is treated as the final decision of the Commissioner.  See *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994).  Ms. Purvis filed a timely petition for judicial review.  The court has jurisdiction in the matter under 42 U.S.C. § 405(g).

*The Statutory Framework for Determining Disability*

To be eligible for supplemental security income, a claimant must establish that she suffers from a disability within the meaning of the Social Security Act.  To prove disability under the Act, the claimant must show that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that could be expected to result in death or that has lasted or could be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  Ms. Purvis was disabled only if her

impairments were of such severity that she was unable to perform work that she had previously done and if, based on her age, education, and work experience, she also could not engage in any other kind of substantial work existing in the national economy, regardless of whether such work was actually available to her. 42 U.S.C. § 1382c(a)(3)(B).

This standard is a stringent one.  The Act does not contemplate degrees of disability or allow for an award based on partial disability.  *Stevens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).  Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful.

The implementing regulations for the Act provide the familiar five-step process to evaluate disability.  The steps are:

(1)   Has the claimant engaged in substantial gainful activity?  If so, she was not disabled.

(2)   If not, did the claimant have an impairment or combination of impairments that are severe?  If not, she was not disabled.

(3)   If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations?  If so, the claimant was disabled.

(4)   If not, could the claimant do her past relevant work?  If so, she was not disabled.

(5)   If not, could the claimant perform other work given her
      residual functional capacity, age, education, and experience?
      If so, then she was not disabled.  If not, she was disabled.

See generally 20 C.F.R. § 404.1520.  When applying this test, the burden of proof

is on the claimant for the first four steps and on the Commissioner for the fifth

step.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).


Applying the five-step process, the ALJ found that Ms. Purvis satisfied step

one because she had not engaged in substantial gainful activity since her alleged

onset date of disability.  R. 21.  At step two, the ALJ found that Ms. Purvis

suffered from "problems with her right shoulder, hips, and back" that were

considered severe impairments.  At step three, the ALJ found that Ms. Purvis

failed to demonstrate that any of her severe impairments met or equaled a listed

impairment.  At step four, the ALJ found that Ms. Purvis was unable to perform

any of her past relevant work.  At step five, the ALJ found that Ms. Purvis retained

the residual functional capacity to perform a significant range of sedentary work.

R. 22.  Based on these findings, the ALJ concluded that Ms. Purvis was not

disabled within the meaning of the Social Security Act.


*Standard of Review*

"The standard of review in disability cases limits . . . the district court to

determining whether the final decision of the [Commissioner] is both supported

by substantial evidence and based on the proper legal criteria."  *Briscoe v.*

*Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005), quoting *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).   To determine whether substantial evidence exists, the court must "'conduct a critical review of the evidence,' considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision . . . ."   *Briscoe*, 425 F.3d at 351, quoting *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); see also *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).   The court must not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses.   *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994).   Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or based his decision on serious factual mistakes or omissions.   *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).   This determination by the court requires that the ALJ's decision adequately discuss the relevant issues: "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with

enough detail and clarity to permit meaningful appellate review." *Briscoe*, 425 F.3d at 351, citing *Herron v. Shalala*,19 F.3d 329, 333-34 (7th Cir. 1994). Although the ALJ need not provide a complete written evaluation of every piece of testimony and evidence, *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005), a remand may be required if the ALJ has failed to "build a logical bridge from the evidence to his conclusion." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

*Discussion*

Ms. Purvis raises a host of specific challenges to the ALJ's conclusion that she retained the ability to perform sedentary work.  These challenges fall within three broad categories:  (1) the ALJ mis-characterized the objective medical evidence relating to her alleged impairments; (2) the ALJ's credibility determination was patently wrong; and (3) the ALJ's residual functional capacity finding was not supported by substantial evidence.  The court finds that a remand is necessary at least because the ALJ failed to support his adverse credibility finding.  Because this failure independently requires remand, and because it incorporates some of the other challenges raised by Ms. Purvis, the court does not reach her remaining arguments.

*Ms. Purvis' Credibility*

The ALJ found that Ms. Purvis was "not entirely credible" regarding the extent to which her alleged impairments, pain, and medications limited her

functional capacity.  See R. 19, 21 (Finding No. 4).  Because the ALJ's credibility finding is not supported by substantial evidence and is patently wrong, it cannot be upheld.

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms and how such symptoms affect her daily life and ability to work.  20 C.F.R. § 404.1529(a).  The regulations require the ALJ to determine whether the claimant is disabled by considering both the claimant's "statements about the intensity, persistence, and limiting effects" of symptoms and the "objective medical evidence" available to support or contradict the claimant's statements.  20 C.F.R. § 404.1529(c)(4).  As part of this analysis, the ALJ must consider "whether there are any inconsistencies in the evidence" as well as any conflicts between the claimant's statements and other evidence in the record.  *Id.*; see also *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (ALJ may discount subjective complaints that are inconsistent or conflicting with the evidence as a whole).

Similarly, Social Security Ruling 96-7p provides that "an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record."  Although Social Security Rulings may not have the full force of law, they

are treated in the Seventh Circuit as binding on the Social Security Administration. *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999); *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991).

Ordinarily, because an ALJ is in a better position than a reviewing court to assess a claimant's credibility, an ALJ's credibility finding is entitled to deference and will not be disturbed unless it is "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995). However, where a credibility determination is based on "objective factors or fundamental implausibilities," a reviewing court has greater freedom to review the ALJ's decision. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994); see also *Briscoe v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005); *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004) (remanding where ALJ based his credibility determination on serious errors in reasoning rather than the demeanor of the claimant).

In this case, the ALJ offered two primary reasons for finding that Ms. Purvis' testimony about her limitations was not credible. First, Ms. Purvis had not reported her alleged limitations to a treating physician. Second, marijuana appeared to control her pain. Neither reason is sufficient to support the ALJ's credibility determination.

I.      *Limitations Not Reported to Treating Physician*s

The ALJ reasoned that if Ms. Purvis were truly unable to sit for more than twenty minutes, to walk for more than one block, or to stand for more than five or ten minutes, she would have reported these limitations to a treating physician. (Ms. Purvis did inform at least the two consulting physicians who examined her – Dr. Jia and Dr. Mara – of these limitations.  See R. 183, 163.)  The ALJ clearly viewed Ms. Purvis' failure to discuss her physical limitations with a treating physician as an important factor in rejecting her testimony about those limitations.   The ALJ erred because he did not consider other potential explanations for her failure to consistently seek treatment, as he was required by both the regulations and Social Security Ruling 96-7p.

Ms. Purvis did not have a treating physician in the traditional sense of a single health care provider with whom she maintained a long-term or consistent treatment relationship.  For the most part, Ms. Purvis met her health care needs by visiting hospital emergency rooms when acute health problems arose.  This fact alone does not necessarily mean that her alleged symptoms were any less credible or her alleged chronic impairments any less disabling.  It did require the ALJ to consider potential explanations besides a lack of credibility for her failure to consistently seek medical treatment.

Under Social Security Ruling 96-7p, an adjudicator "must not draw any inferences about an individual's symptoms and their functional effects from a

failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."  See also *Godbey v. Apfel*, 238 F.3d 803, 808-09 (7th Cir. 2000) (remanding benefits decision where ALJ did not discuss competing reasons for claimant's failure to seek medical attention).  The record suggests several explanations listed in SSR 96-7p that are relevant to Ms. Purvis' situation.

First, Ms. Purvis may have structured her daily activities so as to minimize her symptoms to a tolerable level.  See SSR 96-7p.  Even when a claimant's subjective complaints of pain are not fully supported by the objective medical evidence, the ALJ must obtain detailed descriptions of the claimant's daily activities to assess properly the pain and its effect on the claimant.  See *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001); *Clifford v. Apfel*, 227 F.3d 863, 871-72 (7th Cir. 2000).

The ALJ made no mention of any of Ms. Purvis' daily activities (or the lack of them) in his decision.  Ms. Purvis had reported to Dr. Jia that she used her left hand to "do everything" because of pain and weakness in her right shoulder.  R. 183.  Ms. Purvis also reported that family members performed most of her household chores because of her shoulder pain.  R. 129.  Ms. Purvis testified that she could not even wash her hair without the help of the daughter who lived with her.  R. 60.  Ms. Purvis also testified that in the past she had enjoyed fishing and

crocheting, but that she was no longer able to do these activities.  R. 61.  She testified that a typical day involved staying at home and watching television.  R. 61-63.  Because the ALJ did not discuss Ms. Purvis' daily activities, the court cannot conclude that he considered this evidence as was required.  Accord, *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) ("Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed.").

Second, the record also gives repeated indications that the side effects of Ms. Purvis' prescription medications were even less tolerable than her symptoms.  See SSR 96-7p.  Ms. Purvis testified that the anti-inflammatory medication she took for her hip had caused stomach problems, fever blisters, and weight loss.  R. 58.  She also had reported this issue to treatment providers.  See, *e.g.*, R. 218, 233.  Records from Henry County ER show that Ms. Purvis experienced at least one severe negative reaction to a steroid treatment she received for pain.  R. 205-06.  Ms. Purvis also testified about problems she had encountered taking Prozac.  See R. 77.

The ALJ made no mention of Ms. Purvis' medications or their possible side effects in his decision.  The record shows that Ms. Purvis had tried several powerful medications for anxiety, depression, and chronic pain.  These included Vistaril, Vicodin, cyclobenzaprine, Trilisat, Zoloft, Xanax, Risperdal, Prozac, hydrocode, Diazepam, and Valium.  Again, because the ALJ did not discuss Ms.

Purvis' numerous and repeated efforts to use prescription medications to manage her symptoms, the court cannot conclude that he considered this evidence as required by SSR 96-7p.  Cf. *Wright v. Barnhart*, 2002 WL 1354713, *5 (S.D. Ind. May 15, 2002) (Tinder, J.) (remanding so ALJ could articulate whether claimant's subjective complaints were accurate and credible after consideration of full record: "Despite numerous mentions in the record of [claimant's] pain medications and daily activities, the ALJ does not attempt to describe how he weighed that evidence against the objective medical evidence").

Third and perhaps most important, the record strongly suggests that Ms. Purvis often did not seek needed medical treatment because she simply could not afford to do so.  See SSR 96-7p.  The Seventh Circuit and other courts have questioned the relevance of a claimant's failure to seek medical treatment, especially when the claimant cannot afford to do so.  See, *e.g.*, *Herron v. Shalala*, 19 F.3d at 336 & n.11 ("Lack of discipline, character, or fortitude in seeking medical treatment is not a defense to a claim for disability benefits."), citing *DeFrancesco v. Bowen*, 867 F.2d 1040, 1044 (7th Cir. 1989); *Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989) (ALJ should consider in first instance whether lack of financial resources is claimant's motivation for failing to seek medical attention); *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (discrediting claimant's complaints of disabling pain was erroneous where claimant's testimony that she could not afford further treatment was uncontradicted by the record); *Caviness v. Apfel*, 4 F. Supp. 2d 813, 820-21 (S.D. Ind. 1998) (remanding and

setting aside ALJ's credibility determination as patently wrong where ALJ found "most significant" the claimant's failure to obtain regular medical treatment when evidence showed that claimant could not afford treatment).

In April 2002, Ms. Purvis reported worsening pain but told an agency representative that she was without a family doctor or the resources to obtain one. R. 130.  In a June 2002 visit to the emergency room, Ms. Purvis told the treating nurse that she could no longer hold out until her Medicaid came through.  R. 201. The ALJ asked Ms. Purvis why she did not have a doctor.  She explained that it was because she had moved back to New Castle, Indiana with her brother.  She discussed problems she had encountered in getting paperwork from Wishard Hospital in Indianapolis.  R. 57.  While this information might have shed light on her treatment situation at the time of the hearing, it did not explain why she had failed consistently to seek treatment over the time period for which she sought benefits.  The ALJ was required to consider explanations for this fact other than a mere lack of credibility about her symptoms.

In addition, the ALJ did not discuss the fact that Ms. Purvis did report severe pain at even those visits that were for the treatment of what he labeled as "acute and transitory problems."  Ms. Purvis consistently reported her ten year history of chronic pain to emergency room physicians.  See, *e.g.*, R. 212, 222, 227. Cf. *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) (upholding ALJ's credibility determination where claimant never sought treatment for headaches

or depression despite complaints about their severity).  The ALJ's first reason for discounting Ms. Purvis' testimony cannot support his credibility finding.

II.    *Marijuana as Self-Medication*

The ALJ offered a second reason for concluding that Ms. Purvis' subjective complaints about her physical limitations were not credible, one that sheds an interesting light on the national debate over the medical use of marijuana to relieve pain.   *Gonzales v. Raich*, 545 U.S. —, 125 S. Ct. 2195 (2005) (Congressional power to regulate interstate commerce included power to regulate marijuana that was locally grown and used to relieve pain).  Ms. Purvis testified that she smoked three marijuana joints each day because it was "the only thing" that helped to relieve her hip pain.  R. 58.  The ALJ wrote:

> Additionally, I note that the claimant smokes marijuana on a daily basis to relieve her pain, and while I cannot condone the use of an illegal substance, I do note that the claimant's use of marijuana does not appear to impair her ability to function and, in fact, apparently relieves some of her discomfort.

R. 19.

With all due respect, the ALJ's treatment of this evidence seems to be both unprecedented and precisely backwards.  Ms. Purvis had been trying legal means of controlling her pain for several years.  Those means had produced side effects that made them ineffective.  Her pain was serious enough to drive her to break the law to obtain relief.  Although the Social Security Administration is not directly

responsible for enforcing state or federal drug laws, it seems strange to deny benefits on the theory that illegal drug use is an effective and appropriate method for managing pain.  Nevertheless, this is precisely the reasoning that the ALJ adopted in this case.

Moreover, although Ms. Purvis testified that marijuana helped to relieve some of her pain, she did not claim that it eliminated her pain to the extent that it allowed her to function at a physical level consistent with full-time work.  She testified that she had not used marijuana while she was still working.  R. 76.  Ms. Purvis' marijuana use cannot serve as a proper basis to support the ALJ's decision that her alleged limitations were not credible.   If anything, this evidence underscores how desperate her situation had become.

III.    *Objective Medical Evidence & Other Considerations*

The ALJ's decision contains other brief statements that can be read as explaining his credibility determination.  The ALJ stated broadly that there was "nothing in the evidence" to indicate that Ms. Purvis was as limited as she alleged. He specifically noted that physical examinations had revealed normal or near normal strength in her right arm and that there were no signs of muscle atrophy.

The ALJ's blanket statement that "nothing in the evidence" supported Ms. Purvis' alleged degree of limitation is not true.  The record contains significant objective medical evidence supporting Ms. Purvis' testimony about her alleged

limitations and restrictions.   Multiple radiological examinations showed degenerative arthritis of her spine and shoulder and partial sacralization and spondylolisthesis of her vertebrae.  The ALJ's comments about Ms. Purvis' right arm strength and absence of muscle atrophy are somewhat misleading, because Dr. Jia found mild atrophy in Ms. Purvis' right shoulder, upper arm, and hand and recorded decreased strength in her right upper extremities.   R. 185-86. Although Dr. Mara found normal muscle strength in her upper extremities, see R. 164, a treating physician at Wishard Hospital found decreased strength in her right shoulder.  R. 222.  In addition, the only physician to complete a residual functional capacity assessment of Ms. Purvis concluded that her alleged functional limitations were "fully credible" because they were well supported by the medical findings and not inconsistent with all of the evidence in the record. See R. 160.  The ALJ did not mention this state agency physician's assessment in his decision.  The ALJ's mistaken view of the record cannot support his credibility finding.  See *Clifford,* 227 F.3d at 872 (ALJ's conclusory statement that claimant's testimony about limitations was "unsupported by the medical evidence" lacked sufficient basis on which court could uphold ALJ's credibility determination, especially where record was replete with instances of medical treatment sought for pain); see also SSR 96-7p (ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight").

In fact, in his decision, the ALJ mentioned only the two examinations by consultative physicians (Dr. Jia and Dr. Mara) and the results of Ms. Purvis' several radiology tests.  Remarkably, the ALJ concluded that although her shoulder, back, and hip problems were confirmed by objective radiology findings, and although these problems had a significant effect on her ability to function, there was no evidence suggesting that she would be unable to perform a limited range of sedentary work.  See R. 19.  Under such reasoning, the weight given by the ALJ to Ms. Purvis' own testimony about her limitations was crucial.

In reaching his credibility determination, however, the ALJ did not discuss a fair amount of the evidence in the record.  Based on the ALJ's decision, it is not clear to the court whether the ALJ considered this evidence and rejected it, or whether he merely overlooked this evidence altogether.  While the ALJ is not required to discuss every piece of evidence, he must articulate a legitimate reason for his decision that demonstrates he has considered all of the evidence in the record.  See *Clifford*, 227 F.3d at 872.

In addition to the objective medical evidence, the ALJ is required to consider several other factors as part of his credibility determination, including: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate or aggravate symptoms; and medications, treatment, or other measures used to alleviate symptoms.  See SSR 96-7p.  The ALJ's failure to discuss these factors is discussed

above.  Under SSR 96-7p, the ALJ also must consider observations recorded by Social Security Administration employees during interviews of the claimant.  The ALJ did not discuss comments recorded about Ms. Purvis when she applied for benefits in November 2001, even though the interviewer noted that Ms. Purvis frequently groaned while sitting, leaned to one side, and exhibited difficulty in writing with her right hand.  R. 152.

Finally, SSR 96-7p also requires the ALJ to consider the claimant's prior work history in assessing her credibility.  See also 20 C.F.R. § 416.929(c)(3); *Clifford,* 227 F.3d at 872 (ALJ must investigate all avenues that relate to pain, including claimant's prior work record).  A solid work history marred by injury with a specific onset date tends to reflect favorably on a claimant's credibility.  See *Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir. 1983) (noting positive value of claimant's 32-year employment history prior to disability).

In this case, Ms. Purvis experienced several discrete injuries to her shoulder, hips, and back that were consistent with the physical limitations she alleged.  She had worked 27 years with the same employer.  She testified that she was fired from that job only because she was no longer physically capable of performing the work.  The ALJ did not mention Ms. Purvis' work history at all, although it was certainly one of several factors bearing on her credibility.  In general, the ALJ's failure to consider the full record in rejecting Ms. Purvis'

testimony further supports this court's finding that his credibility determination was patently wrong and not supported by substantial evidence.

*Conclusion*

To affirm an ALJ's ruling, the court must be convinced that "the ALJ considered the important evidence, [and] that the reasons he provided 'build an accurate and logical bridge between the evidence and the result." *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999), quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). When the decision of an ALJ is "unreliable because of serious mistakes or omissions, the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand would be pointless." *Sarchet*, 78 F.3d at 309. Based on the evidence in the record and on the ALJ's written decision, this court is not satisfied that no reasonable trier of fact could have come to a different conclusion than the ALJ came to in this case. Accordingly, the decision of the ALJ is reversed and remanded for reconsideration consistent with this entry. On remand, all steps of the five-step sequential evaluation are subject to reconsideration. Final judgment shall be entered consistent with this entry.

So ordered.

Date: February 1, 2006

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

-29-

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
mulvany@onet.net